Will the clerk please call the last case of the morning? 216-0306, Jackie Page, residing in Progress Co. E. Good evening, Trump Insurance Company. You may proceed. Thank you. Good morning again, Your Honors, Counsel, Attorney Edward Zapp, on behalf of the appellant, Jackie Page. This is a case that involves a 50-year-old delivery truck driver who twisted his left leg in the back of the truck on a wet surface and injured his low back and his left hip. The arbitrator initially found both the hip and the back compensable. The commission only found the back compensable. What's significant, though, about that is the commission did find that Mr. Page sustained an accident in the back of the truck when he slipped on the wet surface. They did not find that the left hip, though, was causally related to that incident. And where I take issue with the commission is their finding that, initially, Mr. Page only complained of lumbosacral complaints when he went for treatment, and the record bears out that that's not the case. Jackie complained of low back pain when he went to the doctor on the initial visit August 29th, and also radiating left groin pain. And I guess what comes down to in this decision is the commission did not equate left groin pain with left hip pain. And that's really what we're looking at here. This is a gentleman that had severe osteoarthritis in both his left and his right hip. When they took the x-rays initially at the company clinic, they x-rayed his hips on that first visit, both the left and the right, and they both showed severe advanced osteoarthritis. However, he only had symptoms with the left hip following the accident at work. He never experienced any symptoms with respect to the right hip. He complains on the initial visit of radiating left groin pain. Three days later, he comes back to the clinic, and again, he reiterates low back and left hip pain. Clearly, he's talking about a problem in the same anatopical area. And you had Berkson as an expert to support the claimant's position, obviously. He was the treating orthopedic, correct. Respondent had Walsh. The commission chose to believe Walsh for certain reasons. So where does that leave us? Well, in anticipating that question, the crux of Dr. Walsh's opinion is what the commission iterated, which was that he mistakenly believes there was no complaint of left hip pain following the accident. And that complaint of radiating left groin pain is consistent with the complaint of left hip pain. Three days later, we have another, quote, left hip pain complaint in the record. It clearly is identified on that second visit as left hip pain. Well, he also disagreed with Berkson's opinion that the condition of claimant's left hip was causally related to claimant's at-work accident. So here we have, if it wasn't for the trauma that he sustained in the back of the truck, why is he symptomatic in that left hip immediately after the accident in August of 2014? Now, this is a gentleman who's asymptomatic in the left hip prior to the accident. He had no prior injury to the left hip. He had no prior medical treatment to speak of whatsoever. Fifty years old, but he's had no treatment whatsoever on that left hip. In fact, he's working as a delivery driver, truck driver, not only driving the vehicle, but he's working with that freight. That's where he's at in the back of the truck when he gets injured. This is a heavy physical job that he's doing. So if it wasn't the trauma where he twists his left leg in the back of the truck that caused the symptoms in his left hip, what was it? Well, Walsh had an answer to that, didn't he? You say he didn't believe that that mechanism could have caused any kind of an injury. Correct. He said that, hey, his hip is so advanced with the osteoarthritis, it was an accident waiting to happen. The problem with that is he's got the same condition on the right side. He's got bilateral osteoarthritis, severe degeneration. But he didn't have any treatment, any symptoms, any problems with the right side. So Dr. Walsh is ignoring the fact that we have the immediate onset of symptoms. This is a cispro case. This is a classic exacerbation or an aggravation of an underlying preexisting condition. If it wasn't the trauma that he sustained in the back of the truck, what brought on the immediate onset of left hip pain? He's got the osteoembolism. So what causes him to be symptomatic and complain of this radiating pain in the hip at the time that he goes for treatment? It's got to be by way of his history of the twisting in the back of the truck working with the freight. Now, Dr. Walsh, I agree, presents an opposite opinion. But again, we look at what he hinges that opinion upon, and he ignores it. You know, I cross-examine him thoroughly. He ignores the facts in this case. He thought this gentleman twisted his knee, not his hip. He thought that this gentleman only complained of low back pain when the record clearly reflects he complained initially of radiating groin pain, second visit left hip pain. They x-ray him on the very first visit. Company clinic sends him for physical therapy. Counsel argues that the PT was only for the back. The records bear out that therapy was for the back and the left hip. This is something that was brought on, the onset of the symptoms, immediately following the trauma in the back of the truck. When's the first mention in the medical records of hip pain? Second visit. Second visit. And that was to? The company clinic. The company clinic. And how far after the accident was that? The accident was the 24th of August. He saw treatment on the 29th, complaining of the radiating left groin pain. The 31st, he complains of the left hip pain. And as I say, they sent him for physical therapy, and the treatment records from therapy show he's getting the treatment for both the hip and the low back. If we look at Dr. Walsh, and I know you've seen his testimony and his opinions in this panel before, he testifies 100% on behalf of the respondents. And not only does he testify strictly on their behalf, but to the tune of over $400,000 a year, he is cranking out these Section 12 medical reports on behalf of the insurance carriers. He did not look at this gentleman's overall picture. And for those reasons, I think if you look at the medical records, it's clear we've got an aggravation of a preexisting condition that's brought upon by a traumatic event in the back of the trunk. I'd ask that the decision of the commission be reversed. It's contrary to the manifest way to the evidence. Clearly, the need for the surgery. On the very first visit that Dr. Bergeson looks at Mr. Page, he says, you aggravated the preexisting condition, and we need to do surgery. Very first visit. He did not have an inhale and wait to see what the situation is. The slip in the back of the truck aggravated the condition to the point where, for the very first time in this 50-year-old gentleman's life, he's complaining of left hip pain. I ask that you reverse the decision and remand the case to the commission. Thank you. Thank you, Counsel. Counsel, you may respond. Good morning, Justices. May it please the Court. My name is Ashley Vinaw. I represent the appellee, Aramsco and Liberty Mutual Insurance, in this matter. This is a classic case of distinguishing, differing medical opinions. It's the second one of the day, and I'm sure Your Honors hear it very frequently. There are factual issues in this case. It falls within the commission to resolve factual issues, and the commission has done so. One issue that the appellant continues to argue in his briefs and in court is that groin pain is the same as hip pain. If you review the appellant's brief, you will notice that Mr. Zappala, for the most part, is a very, very meticulous citer. Nearly every single sentence in his brief is followed with a citation, whether it be to his client's testimony, his client's medical records, Dr. Walsh's testimony, or case law. But there are two sentences in his brief that have no cites, no citations. And I'm not trying to nitpick his brief by any means, but these two sentences are very, very important. And, in fact, his entire argument is based on these two sentences. They are on page 10 of his brief. He argues, quote, petitioner's initial complaint of groin pain is a classic description of hip pain. The location of the groin directly overlaps the anatomy of the hip, end quote. Does he cite to any medical records to support this assertion? Or testimony? No? No. No testimony. There's nothing in Dr. Berkson's medical records that indicate that groin pain is classic symptoms of hip pain. There's nothing in Dr. Berkson's records that indicate the location of the groin directly overlaps the anatomy of the hip. Presumably it's a personal argument or opinion, but it is not supported by any medical testimony. Mr. Zappala may point to page 11 in his brief where he notes, quote, under cross-examination, Dr. Walsh admitted petitioner complained of radiating left groin pain on his initial visit, consistent with trauma to the left hip, end quote. If you look closely at Dr. Walsh's testimony in his transcript, he acknowledges that there was, on the first visit, occasional pain that radiated into the left groin reason. But he said possibly it's consistent with a left leg trauma, possibly with a left hip trauma. Nowhere does Dr. Walsh say that groin pain is classic description of hip pain. Nowhere does Dr. Walsh indicate that the location of the groin directly overlaps the anatomy of the hip. So you're saying nobody says that in this case? Correct. His main argument is not supported anywhere in the record by medical testimony or medical records. It is merely argument. Groin pain is not the same as hip pain. And even if you look at the petitioner's testimony at his arbitration hearing, he indicated that as a result of the work injury, he felt a pull on his low back and left groin. He noted that when he saw the doctor on August 29th of 2011. But he acknowledged in his testimony it was not left hip pain. He said his left hip pain did not start until a week after he started physical therapy. So ultimately the first documented complaint of hip pain is September 1st of 2011,  when Dr. Walsh opined that if this work accident where he slipped and twisted, if it was so significant to as aggravate or accelerate the preexisting osteoarthritis. It wouldn't have taken a week? It wouldn't have taken a week. The pain would have been significant and it would have been immediate. And here Mr. Page didn't even go seek treatment for five days. And when he did, he had a three out of ten pain to his lower back and some radiating groin pain. The appellant argues on page 13 of his brief, quote, the commission's failure to recognize the petitioner's groin complaints as complaints of left hip pain and find that the petitioner injured his left hip is against the manifest weight of the evidence, unquote. Again, that is merely an argument that is not supported by one shred of testimony or medical evidence in the record. The appellant also attacks the credibility of Dr. Walsh. He does it on a factual basis. He just did so, arguing that he only does IMEs for respondents. He generates a lot of income. Dr. Walsh, nonetheless, is a board-certified orthopedic surgeon. He performs 120 surgeries approximately, hip replacements a year. He certainly has the basis and the knowledge to be able to offer opinions regarding causation. In any event, that goes to the weight and the assessment of the credibility of the commission. We don't substitute our judgment for that. Thank you. And that was going to be my precise next point. Ultimately, here, ultimately, the parties presenting presented opposing medical experts. Here, the commission gave greater weight to the opinions of Dr. Walsh. The question for this court is whether there is sufficient evidence to support the commission's decision. And specifically, there is, based on petitioner's medical records, his own testimony, and of course the testimony of Dr. Walsh. While the appellant may not like the commission's decision, the test for this court is whether there is evidence to support that commission's decision. The commission explicitly found that Dr. Walsh's testimony was more credible than that of Dr. Berkson. What caused his hip condition? I'm sorry? What caused his hip condition? He had pre-existing osteoarthritis. It was totally asymptomatic prior to this event? It was, Judge. But if, as Dr. Walsh points out, if this slipping in the back of the truck had been so significant to change the anatomy of that osteoarthritis, the symptoms would have been immediate and they would have been severe. He did not have any complaints of left hip pain for eight days after the accident. To say that a slip in the back of a truck necessitates a hip replacement with having no left hip symptoms for eight days, there's nowhere Dr. Walsh specifically disputes that. And he points out that there would have been immediate pain, it would have been severe, he would have needed crutches, he would have needed a cortisone injection. And quite frankly, the commission had the opinions, the medical records of Dr. Berkson. They had the deposition transcript of Dr. Walsh. They had petitioner's own testimony. They evaluated the credibility already. They found the opinions of Dr. Walsh more credible than the opinions of Dr. Berkson. And at this point, there's nothing, there's sufficient evidence in the record to support the commission's decision. And I ask that you affirm the commission and the circuit court's decision. Thank you. Thank you, counsel. Counsel, you may reply. Thank you. Just briefly, petitioner testified that he worked hurt after the accident on the 24th. He reported the incident immediately to his supervisor, but he continued working for the next four days until he went to the company clinic. This is a 50-year-old delivery truck driver, just an average guy, not a lot of sophistication whatsoever. I don't think it's any stretch of the imagination to think that his complaints to the left groin is consistent with a hip problem. The commission got hung up on the fact that he did not complain of left hip on that initial visit. But three days later, we have clearly in the records records indicating left hip complaint of pain. Both the commission and Dr. Walsh ignored the fact that this gentleman complained of that hip pain on that second visit. And, in fact, I argue that the radiating groin pain is consistent with complaints of the left hip. What do we do with Walsh's opinion that the mechanism of injury that was described to him, slipping and twisting of the hip does not cause an aggravation or acceleration of osteoarthritis? Well, it seems to ignore the causal relationship, or I should say the temporal relationship, between the onset of symptoms and the trauma to that leg. Dr. Walsh initially thought this was just a twist of the knee. He was corrected on cross-examination and acknowledged, no, this was a twist of his left hip. But he still stated his opinion, didn't he? He did. He did. But he asked himself, if it wasn't the trauma in the back of the truck that caused this hip to become symptomatic, what was the inciting event? He has no symptoms on the right side whatsoever, never had an issue, never ran records. Unless he's a walking time bomb, what could have happened getting out of the shower in the morning? And that could be the case. But, again, doesn't the case law say that it just has to be a contributing factor? It doesn't have to be the cause, just a contributing factor. And I think here the relationship between the onset of the symptoms and the trauma, there is a temporal relationship. But Justice Hoffman says Walsh specifically opined on that issue, that it couldn't have caused an aggravation. Yeah, it seems to ignore his complaints that immediately came following the accident in the back of the truck. Well, Walsh's position is that there is no evidence of any complaints of left hip pain itself until eight days later, and if he had been injured on the date of the industrial accident, then in that particular case the pain would have been immediate. So Walsh discounts the causal connection from the very beginning, and then piles on by saying the mechanism of injury wouldn't have produced this injury. But he's incorrect in terms of the records. Petitioner complains of left hip on the second visit to the company clinic. Yeah, eight days later. No. Eight days after the offense. September 1st. Yeah. September 1st. I thought it was the 31st of August. I think it was September 1st. Go ahead. But in any event, it ignores the fact that the clinic had x-rayed his hips. Why are they x-raying this gentleman's hips on the initial visit if he's just complaining of the low back? He's complaining of a radiating pain, a traveling pain into the groin. They do an x-ray of the hip on the very first visit. They're doing that because he may not be the most articulate, individually patient, but he is making overtures of having symptoms to his hip that he never experienced before. Based on my point, if it was so severe and so degenerated that the slightest trauma would cause severe pain, he doesn't feel he can't relate pain in the hip? Does that make any sense? I'm sorry. Who's he? Claimant. He said it was the groin area. First visit, second visit, he says left hip. I submit to the panel that that's the same complaint of symptoms, whether we're talking about the groin or we're talking about the hip. But how do we make that finding that that's the equivalent, they're both the same? Well, unlike Dr. Walsh, the records indicate x-rays to the hip initially, left hip pain on the second visit. They send him for physical therapy for his left hip all prior to that date. It's documented. He may not be the most articulate, but it didn't take Dr. Bergson but one visit to look at him and say, hey, that was an aggravation that you sustained on the back of the truck, and that's why you need the surgery. So I realize we've got competing opinions, but the records, I think, tip in the scales of the petitioner here. And for that reason, I ask that the decision be reversed. Thank you for your attention. Thank you, counsel, both for your arguments in this matter. We take notary advisement when this position shall issue. The court will stand in recess.